**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ROBERT ALLEN et al.,**

                      **Plaintiffs,**           **1:14-cv-1231**
                                                   **(GLS/CFH)**

       **v.**

**ELIZABETH R. BERLIN et al.,**

                      **Defendants.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| New York State United Teachers | CHRISTINA M. FRENCH, ESQ. |
| 800 Troy-Schenectady Road | JENNIFER N. COFFEY, ESQ. |
| Latham, NY 12110-2455 | |
| | |
| Office of Richard E. Casagrande | JAMES D. BILIK, ESQ. |
| 800 Troy-Schenectady Road | |
| Latham, NY 12110-2455 | |
| | |
| **FOR THE DEFENDANTS:** | |
| _Elizabeth R. Berlin, New York State_ | |
| _Education Department_ | |
| HON. ERIC T. SCHNEIDERMAN | TIFFINAY M. RUTNIK |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |
| | |
| _Board of Education of the_ | |
| _Spencerport Central School District_ | |
| Harris, Beach Law Firm | DANIEL J. MOORE, ESQ. |
| 99 Garnsey Road | KYLE W. STURGESS, ESQ. |
| Pittsford, NY 14534 | |

*Board of Education of the Taconic*
*Hills Central School District*
Girvin, Ferlazzo Law Firm          PATRICK J. FITZGERALD, III,
20 Corporate Woods Boulevard       ESQ.
Albany, NY 12211-2350

**Gary L. Sharpe**
**District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs Robert Allen, Matthew Fuller, Carol Lennon, Claudia

Montecalvo, and Emilija Thevanesan commenced this action against

defendants Elizabeth R. Berlin, Acting Commissioner of the New York

State Education Department,[1] the New York State Education Department

(NYSED) (collectively, "State defendants"), the Board of Education of the

Spencerport Central School District, and the Board of Education of the

Taconic Hills Central School District, asserting claims pursuant to 42

U.S.C. § 1983 based upon violations of their First and Fourteenth

Amendment rights to free speech.  (*See generally* Compl., Dkt. No. 1.)

Pending are plaintiffs' motion for a preliminary injunction, (Dkt. No. 2),

---

[1] Although plaintiffs originally named John B. King, Jr., Commissioner of the New York
State Education Department, as a defendant, he was substituted with Berlin, Acting
Commissioner of NYSED, pursuant to Fed. R. Civ. P. 25(d).  (Dkt. No. 37.)

Spencerport's motion to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment, (Dkt. No. 20), and State defendants' motion to dismiss for failure to state a claim, (Dkt. No. 25). For the reasons that follow, Spencerport's motion to dismiss is granted, State defendants' motion to dismiss is denied, and plaintiffs' motion for a preliminary injunction is denied.

## II. **Background**[2]

Plaintiffs in this action are all employed as teachers: Fuller is a science teacher in the Taconic Hills Central School District, and Allen, Lennon, Montecalvo, and Thevanesan work as English teachers in the

---

[2] Unless otherwise noted, the facts are drawn from plaintiffs' complaint and presented in the light most favorable to them. Additionally, the court has considered certain documents outside of the pleadings, to the extent that they are incorporated by reference in, and integral to, the complaint—specifically, the exam scoring manuals for administrators and teachers, including the confidentiality agreements within them, and the scoring leader handbooks provided in conjunction with the 2014 Common Core examinations. (Compl. ¶¶ 21-23, 25, 39, 41-45; Dkt. No. 2, Attachs. 1, 2, 4, 7, 8.) *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (explaining that the court, on a motion to dismiss pursuant to Rule 12(b)(6), may consider documents referred to and relied upon in drafting the complaint, without converting the motion to one for summary judgment). While the court has considered these documents in connection with the parties' Rule 12(b)(6) motions to dismiss, the court declines to convert Spencerport's motion into a motion for summary judgment, as plaintiffs—the non-moving parties—have had no opportunity to conduct discovery. *See* Fed. R. Civ. P. 12(d); *JTH Tax, Inc. v. Gouneh*, 721 F. Supp. 2d 132, 137 (N.D.N.Y. 2010) ("[A]s we are in the preliminary throes of litigation, such that the parties have not yet engaged in any discovery, the court is unwilling to address [the defendants'] arguments as they relate to summary judgment."). In any event, as discussed below, the court finds that Spencerport is entitled to dismissal of all claims against it pursuant to Rule 12(b)(6). Accordingly, the court has not considered the additional materials submitted by Spencerport in support of its motion to dismiss, beyond those indicated above.

Spencerport Central School District.  (Compl. ¶¶ 5-9.)  Each year, NYSED administers the New York State Testing Program, which consists of English and math exams for students in grades three through eight, and science exams for students in grades four and eight.  (*Id.* ¶¶ 14-15.)  Fuller scored the 2014 eighth grade New York State science exam, (*id.* ¶¶ 116, 119), while Allen, Lennon, Montecalvo, and Thevanesan participated in scoring the English exam that year, (*id.* ¶¶ 58, 80-81, 95, 105).

Beginning in 2013, the state exams were drafted pursuant to a new set of standards referred to as the Common Core Learning Standards. (*Id.* ¶ 17.)  Coinciding with the implementation of the Common Core standards, in 2013, and again in 2014, all employees who scored the state Common Core exams were required by NYSED to sign Exam Scoring Confidentiality Agreements.  (*Id.* ¶¶ 18-19.)  As part of the confidentiality agreement, the individual grading the exam agrees "not to disclose any secure test materials, including test questions and answers, other than while participating in the scoring activity."  (*Id.* ¶ 41; Dkt. No. 2, Attach. 7 at 2.)  The confidentiality agreement defines "secure test materials" as "includ[ing], but . . . not limited to, all test books, answer sheets, scoring guides, and any other information, whether printed or electronic (CD),

4

relating to the scoring of the . . . Grades 3-8 Common Core English Language Arts and Mathematics Tests," and also includes "any notes [the scorers] take during [their] participation in the scoring of secure test materials and confidential student information." (Compl. ¶ 42; Dkt. No. 2, Attach. 7 at 2.) Exam scorers must agree to "not use or discuss the content of secure test materials, including test questions and answers, in any classroom or other activities." (Compl. ¶ 43; Dkt. No. 2, Attach. 7 at 2.) Violating the confidentiality agreement potentially subjects exam scorers to "disciplinary actions in accordance with Sections 3020 and 3020-a of Education Law and/or to action against their certification," and the agreement notes "that § 225 of the Education Law makes fraud in exams a misdemeanor." (Dkt. No. 2, Attach. 7 at 2; Compl. ¶ 44.) Plaintiffs allege that scorers of the grade eight science exam are required to sign an equivalent confidentiality agreement. (Compl. ¶¶ 49-50.)

Plaintiffs each signed a confidentiality agreement in connection with their scoring of the 2014 Common Core exams. (Compl. ¶¶ 65, 85, 94, 108, 117, 122.) As a result of signing these agreements, plaintiffs allege that they are prevented from fully discussing their opinions and concerns regarding the Common Core exams, and problems inherent in them,

including the length and difficulty of the exams and the propriety of the amount of time given to complete the exams, the lack of clarity with which exam questions were written, and the disparity between the material tested on the exams and the Common Core standards. (*Id.* ¶¶ 67, 88, 96, 113, 121.) Plaintiffs further allege that they had openly discussed similar issues in connection with past years' exams, and that they currently wish to speak about the same or similar issues in regard to the 2014 Common Core exams, but have not done so, out of fear that they would be disciplined pursuant to the confidentiality agreements. (*Id.* ¶¶ 68, 70-74, 87-91, 97, 99-100, 110-14, 122-25, 127.)

Consequently, plaintiffs allege that the requirement that those scoring the state exams must sign confidentiality agreements "prohibit[s] teachers from speaking about the content of New York State exams in any forum," and that school districts such as Spencerport and Taconic Hills, because they "distribute[ ] and use[ ]" the confidentiality agreements, "chill the exercise of plaintiffs' free speech rights." (*Id.* ¶¶ 132-33.) Plaintiffs thus claim that these agreements violate the Free Speech Clause of the First Amendment. (*Id.* ¶ 135.) They request relief in the form of a declaration that the agreements are "an unconstitutional prior restraint on speech," and

"a preliminary and permanent injunction against the enforcement and implementation" of the agreements, specifically "the imposition of discipline" against plaintiffs. (*Id.* at 24.)

### III. <u>Standards of Review</u>

### A. <u>Motion to Dismiss</u>

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

### B. <u>Preliminary Injunction</u>

"[P]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986).

> In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party.

*Phelan v. Hersh*, No. 9:10-CV-0011, 2010 WL 277064, at *5 (N.D.N.Y. Jan.

20, 2010) (citing *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)).

## IV. Discussion

## A. Motions to Dismiss

In support of its motion to dismiss, Spencerport argues that plaintiffs have failed to allege a policy or practice that would subject the school district to liability under § 1983, and that plaintiffs' claims are not yet ripe for adjudication because they have not alleged an actual or imminent injury.  (Dkt. No. 20, Attach. 3 at 4-14.)  State defendants have also moved for dismissal, arguing that Fuller's claims should be dismissed because he was not required by NYSED to sign a confidentiality agreement in connection with his scoring of the 2014 grade eight science exam, (Dkt. No. 25, Attach. 1 at 4-5), and, additionally, that the remaining plaintiffs' claims are subject to dismissal for lack of standing and failure to state a claim, (*id.* at 5-11).[3]  The court will address each of these motions separately below.

*1.    Spencerport*

---

[3] While it has submitted an opposition to plaintiffs' request for a preliminary injunction, (Dkt. No. 31), Taconic Hills has neither filed a motion to dismiss the claims against it, nor requested to join in the motions of either Spencerport or State defendants.

As noted above, Spencerport has moved for dismissal, arguing primarily that plaintiffs have failed to allege any policy or custom on the part of the district that caused a violation of plaintiffs' constitutional rights.  (Dkt. No. 20, Attach. 3 at 4-9.)  In response, plaintiffs argue that Spencerport is not immune from § 1983 liability.  (Dkt. No. 43, Attach. 1 at 24-33.)  The court agrees with Spencerport.

A municipality may be liable for the constitutional violations of its employees provided that any such violations occurred pursuant to an official policy or custom.  *See Mayo v. Cnty. of Albany*, No. 07-cv-823, 2009 WL 935804, at *2 (N.D.N.Y. Apr. 3, 2009); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978).  A successful claim of municipal liability under section 1983, therefore, requires the plaintiff "'to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)).  As pertinent here, this framework for establishing municipal liability has been extended to apply to school districts.  *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) ("Municipalities and other local

government bodies, including school districts, are considered 'persons' within the meaning of § 1983. . . . The District can therefore only be held liable if its 'policy or custom . . . inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

Here, plaintiffs allege only that the utilization and implementation of the confidentiality agreements in connection with the administration of the state exams was a decision made by NYSED, and there are no allegations that Spencerport had a policy or custom of utilizing such agreements, or disciplining those teachers who violated them. The allegations in the complaint make clear that it was NYSED that was responsible for the testing program and required those who scored the Common Core exams to sign the agreements. (Compl. ¶¶ 1, 14, 18.) Additionally, the agreements were distributed as part of the exam manuals and scorer's handbooks created by NYSED, and the agreements themselves contained the heading "THE STATE EDUCATION DEPARTMENT." (*Id.* ¶¶ 21-22; Dkt. No. 2, Attach. 7 at 2.)

As the Second Circuit has held, "there must have been conscious decision making by the [school district]'s policymakers before the [school district] can be held to have made a conscious choice," such that it would

be subject to liability. *Vives v. City of N.Y.*, 524 F.3d 346, 353 (2d Cir. 2008); *see Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (emphasizing "that the [municipal entity] cannot be liable for merely implementing a policy created by the state [entity]"); *Kelly v. Ulster Cnty., NY*, No. 1:12-CV-1344, 2013 WL 3863929, at *3 (N.D.N.Y. July 24, 2013) ("To satisfy the first prong of the test [for municipal liability] on a motion to dismiss, the plaintiff must allege the existence of . . . a formal policy, which the municipality has officially endorsed."). Plaintiffs point to no such allegations here regarding a conscious choice made by Spencerport to utilize the confidentiality agreements. Plaintiffs simply argue that school districts are the only entities that could implement a particular form of discipline referenced in the confidentiality agreements, and that this somehow subjects Spencerport to liability under *Monell*. (Dkt. No. 43, Attach. 1 at 27-28.) However, while plaintiffs may have adequately pleaded the violation of a constitutional right, they have not pleaded that an official policy or custom *of the school district* caused such violation. *See Roe v. City of Waterbury*, 542 F.3d 31, 36-37 (2d Cir. 2008) (emphasizing that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal

quotation marks and citation omitted)).  Accordingly, Spencerport's motion to dismiss is granted.

    2.    *State defendants*

State defendants argue that dismissal of all claims against them is merited here because: 1) Fuller was not, in fact, required by NYSED to sign a confidentiality agreement in connection with his scoring the 2014 grade eight science exam, (Dkt. No. 25, Attach. 1 at 4-5); and 2) the remaining plaintiffs lack standing or have otherwise failed to state a claim, (*id.* at 5-11).  State defendants' motion is denied.

First, with respect to Fuller, unlike the remaining plaintiffs, the court has not been provided with the form agreement allegedly signed by graders of the eighth grade science exam—according to State defendants, that is because scorers of that exam were not in fact required to sign any confidentiality agreement.  (Dkt. No. 25, Attach. 1 at 4-5.)  In other words, State defendants simply deny Fuller's allegations that he did sign an agreement similar to the one used for the English and math exams and signed by the other plaintiffs, and that the "threat of disciplinary action" in the science exam agreement prevented him from openly discussing his concerns with the exam.  (Compl. ¶¶ 49-50, 55, 117-18, 122, 125, 127.)

While defendants may ultimately be able, after discovery, to substantiate their contention that no confidentiality agreement was in fact used in connection with the grade eight science exam, at this juncture, Fuller's allegations are entitled to the presumption of truth, and all reasonable inferences are to be drawn in his favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Therefore, Fuller's claims against State defendants may not be dismissed on the basis of State defendants' denials alone.

State defendants next argue that the remaining plaintiffs lack standing because the alleged chilling effect on their speech is too speculative, and their claim is thus not yet ripe for review. (Dkt. No. 25, Attach. 1 at 5-7.) The court disagrees.

To establish constitutional standing under Article III, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Similarly, the ripeness doctrine dictates that a court should not entertain a case in which the dispute has not yet

"matured to a point that warrants decision." *Tri-State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *2 (N.D.N.Y. Feb. 13, 1998) (citing *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 109 (2d Cir. 1998)); *see N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical." (internal quotation marks and citations omitted)). In the First Amendment context, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy[,] . . . [b]ut a real and imminent fear of such chilling is enough." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) (citation omitted). Furthermore, in prior restraint cases such as this one, courts apply a "somewhat relaxed" standard for assessing standing and ripeness. *See id.*

Here, in order to ultimately prevail, it will be plaintiffs' burden to substantiate their claims with more than just a subjective allegation that their speech was chilled. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (noting that allegations of a "subjective 'chill' [of First Amendment rights] are not an adequate substitute for a claim of specific present objective

14

harm or a threat of specific future harm").  However, at this juncture, plaintiffs' allegations are sufficient to withstand a motion to dismiss.  *See Hispanic Leadership Fund, Inc. v. Walsh*, No. 1:12-cv-1337, 2013 WL 5423855, at *6 (N.D.N.Y. Sept. 26, 2013) (explaining that, for purposes of standing, "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court may] presum[e] that general allegations embrace those specific facts that are necessary to support the claim'" (quoting *Lujan*, 504 U.S. at 561)).  Plaintiffs have expressly alleged that they were required to sign NYSED's confidentiality agreements, which clearly threaten specific disciplinary action if they are violated, and that this threat of a specific future harm chilled their speech.  (Compl. ¶¶ 18, 44, 68, 70-74, 87-91, 97, 99-100, 110-14, 122-25, 127.)  The court is satisfied that this fulfills plaintiffs' requirement of pleading "a claim of specific present objective harm or a threat of specific future harm."  *Laird*, 408 U.S. at 13-14.  In other words, plaintiffs have adequately alleged "an injury in fact; that is, . . . some 'threatened or actual injury resulting from the putatively illegal action.'"  *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

While State defendants cite cases in which the plaintiffs continued engaging in speech despite their subjective allegations of a chill, and thus no chilling effect was found, that is not the case here.  (Dkt. No. 25, Attach. 1 at 7.)  Contrary to State defendants' contention that plaintiffs "fail to allege how the ELA confidentiality clause changed or will change their behavior," (*id.*), the complaint expressly alleges that plaintiffs engaged in this type of speech in the past, and that they currently wish to engage in it again, but are prohibited from doing so because of the confidentiality agreements and the threat of discipline.  (Compl. ¶¶ 68, 70-74, 87-91, 97, 99-100, 110-14, 122-25, 127.)  State defendants' remaining argument, that the value of plaintiffs' desired speech is outweighed by the value of efficiency in administering the state exams, (Dkt. No. 25, Attach. 1 at 7-11), is best resolved on a fuller record, and not at the motion to dismiss stage, as the exact contours of plaintiffs' desired speech, and the values served by limiting such speech, will be further borne out in discovery.  Accordingly, State defendants' motion to dismiss is denied.

## B.   Preliminary Injunction

In support of their request for "a preliminary injunction against the enforcement and implementation of the terms of the . . . [c]onfidentiality

[a]greement[s]," (Dkt. No. 2 at 3), plaintiffs argue that they have established both irreparable harm and a likelihood of success on the merits. (Dkt. No. 2, Attach. 12 at 14-19.) In opposition, State defendants and Taconic Hills contend that plaintiffs have not adequately demonstrated entitlement to a preliminary injunction.[4] (Dkt. No. 30 at 4-9; Dkt. No. 31 at 3-4.) In short, plaintiffs have not met their burden of demonstrating their entitlement to a preliminary injunction, and, therefore, their motion is denied.

Even assuming plaintiffs were to satisfy the irreparable harm prong, the court cannot say, at this juncture, that plaintiffs have satisfied their burden of demonstrating a likelihood of success on the merits. With respect to the merits of plaintiffs' claims, regulations on the speech of government employees are evaluated pursuant to the balancing test announced in *Pickering v. Board of Education of Township High School*

_____

[4] Although Spencerport has submitted an attorney affirmation in response to plaintiffs' request for a preliminary injunction, Spencerport indicates that it "takes no position with respect to . . . [p]laintiffs' request for a preliminary injunction enjoining the use or enforcement of the [c]onfidentiality [a]greements," because of its view, more fully discussed in its dismissal motion papers, that Spencerport "plays no active role in the requirement and administration of the [c]onfidentiality [a]greements, but rather simply acts as a pass-through vehicle for the execution of a State mandate." (Dkt. No. 32 ¶ 6.) In any event, because Spencerport is dismissed as a defendant in this action, the request for a preliminary injunction against it is denied as moot.

*District 205*, 391 U.S. 563 (1968).[5]  *See Lewis v. Cowen*, 165 F.3d 154, 161-62 (2d Cir. 1999).  The *Pickering* test requires a court to "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering*, 391 U.S. at 568.  "Where a restraint [on speech] is accomplished through a generally applicable statute or regulation, as opposed to a particularized disciplinary action, [the court] must also make sure that the regulation's sweep is reasonably necessary to protect the efficiency of the public service."  *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171-72 (2d Cir. 1999) (internal quotation marks and citation omitted).

In support of their motion, plaintiffs contend that they are likely to succeed on the merits of their underlying claims because "[t]he

---

[5] The First Amendment protects a public employee's speech only when it is "made as a citizen on matters of public concern rather than as an employee on matters of personal interest."  *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 129-30 (2d Cir. 2013) (internal quotation marks and citation omitted).  "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'"  *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Connick*, 461 U.S. at 147-48.  In addition, a public employee's speech is only protected to the extent that it is made as a citizen, as opposed to as an employee "pursuant to [one's] official duties."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[c]onfidentiality [a]greements are overreaching and unconstitutional, since they chill all speech concerning the State examinations, no matter what the subject matter." (Dkt. No. 2, Attach. 12 at 16-18.) However, defendants argue that plaintiffs' assertion appears belied by the plain language of the agreements themselves, which prohibit the disclosure of "secure test materials"—specifically defined in the agreements as "all test books, answer sheets, scoring guides, and any other information" regarding the Common Core tests, (Dkt. No. 2, Attach. 7 at 2)—and do not prohibit "all speech concerning the State examinations, no matter . . . the subject matter," (Dkt. No. 2, Attach. 12 at 16). (Dkt. No. 30 at 5-6.) Therefore, at this juncture, the court finds this generic argument by plaintiffs regarding their likelihood of success on the merits to be unpersuasive.

The remainder of plaintiffs' argument as to success on the merits consists of their assertions that the *Pickering* balancing test would be resolved in their favor and dictate a finding that defendants' use of the confidentiality agreements is unconstitutional. (Dkt. No. 2, Attach. 12 at 18-19.) Plaintiffs maintain that some of the "information [they] wish to disclose does fall within the category of secure test materials," and that, because this speech is chilled, they are likely to succeed in demonstrating

that the use of the confidentiality agreements is unconstitutional.  (Dkt. No. 39, Attach. 4 at 16-20.)  However, in the course of their argument, plaintiffs have failed to cite to any factual support, and, "[i]n the absence of a record to support plaintiffs' contention in this regard," the court is "unable to conclude that the procedure is not justified as a 'reasonable restriction[ ] on employee activities that in other contexts might be protected by the First Amendment,' or as 'reasonably necessary to protect the efficiency of the public service' provided by" NYSED.  *Safir*, 170 F.3d at 172-73 (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980); *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 474 (1995)).  Plaintiffs are, of course, free to seek a permanent injunction on a more complete record.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Spencerport's motion to dismiss (Dkt. No. 20) is **GRANTED** and that the Clerk terminate Spencerport as a defendant in this action; and it is further

**ORDERED** that State defendants' motion to dismiss (Dkt. No. 25) is **DENIED**; and it is further

**ORDERED** that plaintiffs' motion for a preliminary injunction (Dkt. No.

2) is **DENIED**; and it is further

ORDERED that the parties contact Magistrate Judge Christian F.

Hummel to schedule further proceedings in this case; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 15, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge